## DUNNETT et al. v. FIRST NAT. BANK & TRUST CO.

No. 28862.     Nov. 30, 1938.

Disney & Raynolds, W. E. Disney, and R. W. Raynolds, for plaintiffs in error.

Benjamin C. Conner and John M. Winters, Jr., for defendant in error.

OSBORN, C. J. Raymond Murray Dunnett, Annabel Agreci, formerly Annabel Dunnett, and Daniel Raymond Dunnett filed suit against the First National Bank & Trust Company, a corporation, trustee, in the district court of Tulsa county seeking to revoke and dissolve a certain trust agreement. Under the terms of the trust, Raymond Murray Dunnett and Annabel Dunnett, now Agreci, formerly husband and wife, settlors, are life beneficiaries, their only child, Daniel Raymond Dunnett, is the other present beneficiary, and the First National Bank & Trust Company is the trustee. The trial court refused to dissolve the trust, and plaintiffs herein, settlors and beneficiaries, appeal. The plaintiffs are all sui juris.

The settlors created this trust in December, 1929, at which time they were husband and wife. Raymond Murray Dunnett and Annabel Dunnett, now Agreci, settlors, were to receive the net income during their respective lives, except for a nominal monthly payment to their son. The agreement further provided that, if either settlor died, the survivor should receive the income for life; that in the event both settlors predeceased their son, Daniel Raymond Dunnett, the son should receive, at the age of 45 years, the corpus and all accrued income from the trust estate. In the event settlors' son, Daniel Raymond Dunnett, survived them, but died before the age of 45 years, the residue of said trust should be paid as he might direct by will, and in the event he left no will, then the trustee should pay and deliver the trust principal to the issue of Daniel Raymond Dunnett by representation or to the legal guardian of such issue as shall be at the time minors. The trust further provided that if under the above circumstances Daniel left no will and no surviving issue, then one-half of the trust estate should go to Raymond Murray Dunnett's heirs at law, to be determined the same as if his death had occurred at the time of the death of Daniel, and one-half to Annabel Dunnett's, now Agreci,

heirs at law, the same as if her death had occurred at the time of the death of Daniel.

It is the generally accepted rule that a trust, even though it is a "spendthrift" trust, or one declared by the instrument creating it to be irrevocable, may be revoked upon the mutual consent of the settlor and all parties having a beneficial interest in said trust. Western Battery & Supply Co. v. Hazelett Storage Battery Co., 61 Fed.2d 220; 46 Yale Law J. 1005; 38 A. L. R. 941, cases cited in annotation; 91 A. L. R. 102, cases cited in annotation; Restatement of Law of Trusts, sec. 338.

The question presented in the case at bar is whether the plaintiffs herein are the only parties having a beneficial interest in the trust. Counsel for the trustee contend there are two groups of persons, at this time, either unborn or unascertained, having such a beneficial interest in said trust. First, the possible unborn issue of Daniel Raymond Dunnett; and, second, the undetermined heirs at law of the settlors. If either of these two have such an interest, the plaintiffs cannot terminate the trust.

In order for a person to have such beneficial interest that the trust cannot be revoked without his consent it must be an interest taken by purchase under the terms of the trust agreement; if the interest is one which the person takes by descent rather than by purchase, it is not such an interest as to require his consent to revoke the trust. Akers v. Clarke (Ill.) 56 N. E. 296; Schoellkopf v. Marine Trust Co. of Buffalo (N. Y.) 196 N. E. 288; Dodson v. Ball, 60 Pa. 492, 100 Am. Dec. 586; Doctor v. Hughes (N. Y.) 122 N. E. 221; Hobbie v. Ogden (Ill.) 53 N. E. 104, 38 A. L. R. 941, cases cited in annotation; 91 A. L. R. 102, cases cited in annotation; 46 Yale Law J. 1005; Restatement of Law of Trusts, sec. 127-128.

Whether a person takes by purchase under a trust is to be determined from the terms of the trust agreement as a whole, coupled with the manifest intent of the settlor in creating the trust, since the "creator of a trust can do as he pleases with his property, and courts look to his words to guide them in decisions." Whittemore v. Equitable Trust Co. (N. Y.) 165 N. E. 454. Or, as stated by the United States Circuit Court of Appeals in O'Neil v. Dreier. 61 F.2d 598:

"The rule in cases involving the interpretation of wills and trust instruments is that the intention of the testator or trustor must control. But little aid, however, in such cases is to be derived from a resort to formal rules or a consideration of judicial determination in other cases apparently similar. * * *" Robison v. Female Orphan Asylum, 123 U. S. 702, 31 L. Ed 293."

The purpose of the settlors in creating this trust is clearly expressed in the trust agreement as follows:

"Whereas, grantors are the owners of certain moneys, stocks, bonds, promissory notes and other securities; and

"Whereas, it is the desire of grantors to employ the financial skill of a corporate fiduciary in the conversion of said securities into moneys and the investments and reinvestment of such moneys in such securities as may be productive of conservative income; and,

"Whereas, grantors, and particularly the grantor, Raymond Murray Dunnett. because of the engrossing character of his business affairs, desire to relieve themselves of the cares and burdens of the management and investment of said funds; and,

"Whereas. grantors are desirous of securing to themselves and to their son. Daniel Raymond Dunnett. a periodic income from the trust estate and of presently providing for the maintenance. education and financial establishment of their son. Daniel Raymond Dunnett."

It is, therefore, obvious that the primary purpose of the settlors in creating this trust was to provide an income for themselves for their respective lives and educate and establish their son rather than to dispose of their estate as if creating a testamentary trust. The intent is manifest not only in the above statement but throughout the entire instrument.

First, we shall determine whether the "heirs at law" of the settlors took an interest by purchase in the trust. The trust provided that if the son of the settlors died subsequent to the death of both settlors, but before becoming 45 years of age. without surviving issue or having exercised his power of appointment by will, then the trust should terminate and the principal go one-half to the heirs at law of Raymond Murray Dunnett and one-half to the heirs at law of Annabel Dunnett. now Agreci: both groups of heirs to be determined as if the settlors had died at the time of their son's death.

In Doctor v. Hughes. supra. the New York Court of Appeals. in determining the interest of heirs at law where the trust agreement provided the principal should go to the

heirs at law of the settlor, upon the termination of said settlor's life interest, said:

"A reservation to the heirs of the grantor is equivalent to the reservation of a reversion to the grantor himself."

And that being true, the heirs at law of a settlor, under such circumstances, would take by descent from the settlor and not by purchase. Burton v. Boren (Ill.) 139 N. E. 868; Doctor v. Hughes, supra; Fidelity & Columbia Trust Co. v. Williams (Ky.) 105 S. W.2d 814; Hobbie v. Ogden (Ill.) supra; Akers v. Clarke, supra; Riggen v. Love, 72 Ill. 553; Alexander v. de Kermel, 81 Ky. 345.

In Burton v. Boren, supra, the settlor conveyed property in trust with a life estate in himself and upon his death to his heirs. In determining whether the heirs of the settlor took as reversioners by descent from the settlor or by purchase the Illinois Supreme Court said:

"In the Akers and Biwer Cases (Akers v. Clarke, supra, and Biwer v. Martin, 128 N. E. 518) it was held that, where a grantor conveys a life estate with a remainder over to his heirs, the heirs do not take a remainder at all. The word 'heirs' will be regarded as defining or limiting the estate which the first taker has. In such case the heirs would take as reversioners by descent from the grantor and not under the deed."

While this court has not heretofore passed upon a similar question relative to trust beneficiaries, a somewhat analogous situation was involved in Conrad v. Funnell, 106 Okla. 56, 232 P. 950, wherein it was necessary to construe a certain deed. The grantor conveyed a life estate in certain real property to his second wife for life and upon her death to revert to his children by another wife, naming the children. Thereafter, but during the lifetime of the life tenant, the grantor conveyed said property in fee simple to only two of the designated heirs. Upon obtaining a quitclaim deed from the life tenant, these two grantees brought suit to quiet their title. In the opinion therein this court adopted the language of the Illinois court in Akers v. Clarke, supra, wherein that court said:

"A deed conveying a life estate to the grantee and at her death to revert back to my heirs creates a life estate only, the fee being in the grantor and his heirs as reversioners, and the grantor, being the reversioner first in order of time, may dispose of the fee by will or deed, subject only to the life estate."

In view of the foregoing authorities, we conclude, therefore, that any interest which the heirs at law of the settlors herein might have is merely a reversion by descent from said settlors and not by purchase under the terms of the trust. Nor does the fact that the heirs at law are to be determined as of the date of the death of the son, Daniel Raymond Dunnett, rather than the actual date of the settlors' individual deaths, alter the conclusion. The fact remains that such persons would still take by virtue of their relationship to the settlors under the laws of descent and distribution.

Moreover, the words "heirs," as used herein, should not be construed as a word of purchase unless it is clearly used with that intent. Botzum v. Havana Nat. Bank (Ill.) 12 N. E.2d 203; Akers v. Clarke, supra.

The remaining question is whether the unborn issue of the son of the settlors, Daniel Raymond Dunnett, take an interest by purchase in the trust. As heretofore pointed out, the trust provides that if Daniel Raymond Dunnett dies before he becomes 45 years of age, but subsequent to the death of both settlors, not having exercised his power of appointment by will, and leaving surviving issue, the trust shall terminate and the trust principal be conveyed to said issue. Daniel Raymond Dunnett was 24 years old and unmarried at the time this action was instituted.

The trust should be construed in accordance with the intent of the settlors and the interest of the unborn issue of Daniel Raymond Dunnett should be only that which the settlors intended to give. It is apparent the settlors were seeking security of income for themselves and to educate and establish their only child rather than to establish a vested estate for the benefit of any unborn issue or undetermined heirs at law. If the settlors had intended to establish a trust, similar to a testamentary trust, for the purpose of distributing their property among their lineal descendants, and in the absence thereof to their heirs at law, it would seem unreasonable for them to include the possible issue of their then only child and exclude, or fail to provide for, any children they might have in the future.

Counsel for the trustee cite the case of Johnson v. Provident Trust Co. (Pa.) 124 Atl. 436, as being squarely in point with the case at bar. In that case the settlor created a trust with income to one MacEwan until he became 30 years of age, at which time the trust was to terminate and

the principal delivered to said MacEwan, but if he should die before reaching that age, the principal should be distributed according to MacEwan's will, and in default thereof to his children, but if no surviving children, then to descend in accordance with the laws of descent and distribution. The settlor retained no interest whatsoever in the trust. Before MacEwan became 30 years old he and the settlor sought to cancel the trust and have the principal conveyed absolutely to MacEwan.

Under the foregoing facts, the Pennsylvania Supreme Court held that the plaintiffs, settlor and cestui que, were not the "only persons 'who are or may be interested in the trust property,' " and refused to cancel the deed of trust. The opinion of the court is primarily confined to distinguishing the cases relied upon by the plaintiff and it is difficult to determine whether the court concluded the unborn children of the cestui que or his heirs at law, or both, were the parties beneficially interested. We can only surmise that the court held either or both groups to be purchasers.

Moreover, one obvious distinction is that in the case at bar the settlors retained the income from the trust for life as well as the reversion under certain circumstances. Aside from the provision regarding "heirs at law" of the settlors heretofore discussed, it will be noted that no disposition is made of the trust principal if the son predeceases both settlors, and in the event that happened the trust principal would revert to the settlors. Carter v. Lewis (Ill.) 4 N. E.2d 853, 108 A. L. R. 458. Consequently, in view of the obvious difference in the factual situation and the other objections to the opinion discussed above, we cannot accept the foregoing decisions as decisive in the case at bar. We may also point out that the intent of the settlors in the two cases would certainly differ, since one is divesting himself of all interest in the property and the other is retaining a life income therefrom as well as a possible reversion.

In New York the right to revoke a trust of personalty is granted by statute, and, since that statute is substantially the same as the general rule adopted in this opinion, the New York decisions construing this provision as regards unborn issue are worthy of consideration. Section 23, Personal Property Law of New York, Consol. Laws N. Y., c. 41, provides:

"Upon the written consent of all persons beneficially interested in a trust in personal property or any part thereof, heretofore or hereafter created, the creator of such trust may revoke the same as to the whole or such part thereof, and thereupon the estate of the trustee shall cease in the whole or in such part thereof."

Before considering the decisions involving the interests of unborn heirs, it is to be noted that under the foregoing statute it has been held by the New York courts that a person, to be beneficially interested in a trust, must take that interest by purchase and not by descent. Whittemore v. Equitable Trust Co., 147 N. Y. S. 1058; Schoellkopf v. Marine Trust Co., of Buffalo, supra. Thus adopting the general rule heretofore discussed in this opinion.

In Cram v. Walker, 160 N. Y. S. 486, the settlor and his wife created a trust with income to themselves equally during their joint lives, and upon the death of either one-half of the principal was to go to their surviving child or children, and the income from the remaining half to the survivor of the settlors for life. Upon the death of the surviving settlor the trust was to terminate and the balance of the principal to go to the then living children or the living issue of the deceased children of the settlors. One of the settlors, the wife, died and thereafter the settlor and their only child, an unmarried adult son, joined in an action to revoke the trust as to certain specified property. The trustee contended that the unborn issue of the son of the settlors were persons interested in the trust, and, consequently, it was irrevocable during the life of the surviving settlor because the trust principal would go to such issue, if born, and their father predeceased the surviving settlor. In concluding that the surviving settlor and his son were the only persons interested and their consent was sufficient to revoke the trust, the court said:

"It seems to me to be clearly the meaning of the statute that a trust in personal property is revocable by the creator thereof upon the consent of all persons in being who are beneficially interested therein, and, if there be no person in being, who has either a vested or contingent interest in the trust, such revocation is effectual."

In Kuntze v. Guaranty Trust Co., 290 N. Y. S. 812, and O'Leary v. Grant, 278 N. Y. S. 839, the court, under facts similar to those of Cram v. Walker, supra, also held that the unborn heirs were not persons beneficially interested in the trust. In O'Leary v. Grant, supra, the court said:

"The question as to who are necessary

parties in an action to revoke a trust was recently discussed in McKnight v. Bank of New York & Trust Co., 254 N. Y. 417, 173 N. E. 568. The Court of Appeals, after stating that in such an action all beneficiaries are necessary parties, stated in 254 N. Y., at page 421, 173 N. E. 569: 'Not always is it easy to determine in an action of this kind who should be made parties, or who are beneficially interested, but the prevailing equitable rule appears to be that all those who are living and are beneficially interested should be made the parties in an action to set aside or revoke an instrument or deed of trust.' "

Under the rule adopted in the foregoing cases, only the consent of persons in being is required for revocation of a trust under the rule that by mutual consent the settlor and all persons beneficially interested in a trust may revoke the same.

Furthermore, as pointed out, the express intent of the settlors in creating the trust herein is contrary to and inconsistent with the conclusion that the unborn issue of Daniel Raymond Dunnett took an interest by purchase under the terms of the trust agreement. Therefore, since the unborn issue of Daniel Raymond Dunnett do not take an interest by purchase in the trust, they are not persons beneficially interested under the rule adopted in this opinion, and the plaintiffs herein, being the only persons with such an interest, may revoke and terminate the trust.

It is well to point out that the undisputed reason for the parties seeking to dissolve this trust is to procure sufficient capital for Daniel Raymond Dunnett to establish himself in business with his father, Raymond Murray Dunnett, and furthermore that Annabel Agreci, formerly Dunnett, is to be provided with an annuity assuring her a more certain income than she derives from the trust under present circumstances. Since one of the express reasons for creating the trust was to educate and establish the son in business, we cannot see where revocation and termination of the trust will defeat any of the purposes for which it was created.

The judgment of the trial court is reversed, with directions to enter judgment in accordance with the view herein expressed.

BAYLESS, V. C. J., and RILEY, WELCH, CORN, GIBSON, HURST, and DAVISON, JJ., concur. PHELPS, J., absent.